

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-15-2009

# Marguerite Kelley v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket No. 08-1652

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Marguerite Kelley v. Comm Social Security" (2009). *2009 Decisions.* Paper 1272.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1272

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1652
_____

MARGUERITE P. KELLEY,

Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 2:07-cv-1628)
District Judge: Honorable Lawrence F. Stengel

_____

Argued January 8, 2009
_____

Before: CHAGARES, HARDIMAN, Circuit Judges, and ELLIS,
Senior District Judge.[*]

(Opinion Filed: May 15, 2009)
_____


_____

[*] The Honorable T. S. Ellis III, Senior District Judge,
United States District Court for the Eastern District of Virginia,
sitting by designation.

SCOTT A. DYE (Argued)
Cohen, Fluhr & Gonzalez
1429 Walnut Street
Suite 1500
Philadelphia, PA 19102
          *Counsel for Appellant*

ERIC P. KRESSMAN
Acting Regional Chief Counsel
PATRICIA M. SMITH
Acting Supervisory Regional Counsel
Social Security Administration
Office of the General Counsel
P.O. Box 41777
Philadelphia, PA 19101

LAURA MAGID
Acting United States Attorney
BEVERLY H. ZUCKERMAN (Argued)
Special Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
          *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

ELLIS, Senior District Judge.

This social security appeal presents the novel question whether the proceeds of the sale of a marital home—placed in escrow by divorcing parties—are a countable resource for purposes of assessing eligibility to receive Supplemental Security Income ("SSI") benefits. The Commissioner of Social Security denied Marguerite Kelley's application for SSI benefits on the ground that these proceeds were a countable resource rendering her ineligible

2

for SSI benefits. The District Court upheld this decision. We agree and affirm.

I.

Marguerite Kelley suffers from chronic pain and fatigue secondary to Crohn's disease. On March 5, 2003, Kelley applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. This claim was denied on May 23, 2003, and Kelley then requested an administrative hearing. On August 6, 2003, Kelley filed an application for SSI under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. On February 24, 2005, an administrative law judge ("ALJ") held a hearing to review both her DIB and SSI claims.

At the time of the hearing, Kelley was involved in divorce proceedings. She and her husband had sold their marital home approximately two years earlier, and by agreement they placed the proceeds of the sale in an escrow account until they could reach a further agreement on distribution.[1] During the hearing, the ALJ indicated that he would leave the record open for two weeks during which time Kelley could submit any additional materials. Kelley's counsel submitted a brief, attached to which was an affidavit from the attorney who represented Kelley in her divorce.[2] Yet, it is

_____

[1] During the hearing, Kelley stated first that there was a court order with regard to the escrow, but then indicated that she and her husband created the escrow because they could not initially agree on an equitable distribution of the proceeds from the home's sale. (A.R. at 545–46.) Kelley has submitted no evidence showing that the escrow account was created by court order or that a court order precluded her from accessing the funds.

[2] In the affidavit, which does not reflect the year it was executed, Kelley's divorce attorney stated that (i) the funds from the sale of the Kelley's marital home had been placed in an escrow account; (ii) the current balance of the escrow account was $42,088.44; (iii) Kelley had no access to those funds; (iv) the funds would be subject to equitable distribution in the divorce action; (v) Kelley would, "in all likelihood, not have a claim in excess of 60%

3

unclear from the record whether the affidavit was submitted within the allotted two weeks and, according to the Commissioner, the ALJ excluded it as untimely.[3]

On March 24, 2005, the ALJ issued a decision denying Kelley's claim for DIB and SSI.[4] The ALJ determined, in pertinent part, that Kelley's "share of the proceeds from the sale of the marital home are a countable resource notwithstanding the fact that the proceeds are presently being held in an escrow account" and accordingly concluded that Kelley was not eligible for SSI. (A.R. at 18–19.) Kelley requested review by the Appeals Council and submitted to the Appeals Council the same affidavit she had sent to the ALJ following the hearing. On March 2, 2007, the Appeals Council denied Kelley's request, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (stating that the ALJ's decision is binding if the Appeals Council denies a claimant's request for review); *see also Welch v. Heckler*, 808 F.2d 264, 267 (3d Cir. 1986) (noting that the ALJ's decision becomes final and eligible for judicial review when approved by the Appeals Council). In the course of denying Kelley's request for review, the Appeals Council noted that the additional evidence Kelley submitted provided no basis for reversing the ALJ's decision.

Kelley then filed this civil action pursuant to 42 U.S.C. § 405(g). In support of her request for review, Kelley submitted

---

of the funds;" and (vi) Kelley had outstanding debts in excess of $100,000. (A.R. 510.) The affidavit does not include the escrow agreement nor does it describe its terms or provenance.

[3] The accompanying brief is stamped as having been received on March 15, 2005, a fact the Commissioner points to as showing that the affidavit was not timely submitted and thus not part of the record before the ALJ. Yet, the brief is dated March 10, 2005, and indicates that it was being transmitted by fax and first-class mail, facts Kelley relies on to argue that the materials were submitted within two weeks of the hearing.

[4] Kelley did not appeal the DIB portion of the ALJ's decision.

4

three additional documents: (i) a copy of her divorce decree, which shows that she and her husband signed a property settlement agreement on November 1, 2006, and that their divorce was finalized on December 27, 2006; (ii) a letter dated June 7, 2007, from her divorce attorney to her mother indicating that Kelley's portion of the escrowed funds had been used to repay her mother, who had paid for most of Kelley's legal fees, and to pay "for other fee balances, medical insurance and other bills associated with the children" (Appellee's Supp. App. at 2); and (iii) a July 23, 2007, notice of award letter from the Social Security Administration indicating that Kelley was eligible to receive SSI as of July 1, 2007.[5] The matter was then referred to a magistrate judge, pursuant to 28 U.S.C. § 636(b)(1)(B), who issued a report and recommendation concluding (i) that the ALJ correctly determined that the escrowed proceeds from the sale of Kelley's marital home constituted a countable resource and (ii) that none of the materials submitted by Kelley after the administrative hearing warranted a different conclusion. On January 3, 2008, after considering Kelley's request for review and the Commissioner's response and reviewing the report and recommendation, the District Court denied Kelley's request for review and entered judgment in favor of the Commissioner. Kelley timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

The sole issue on appeal is whether the proceeds from the sale of Kelley's marital home, placed in an escrow account by Kelley and her then-husband pending equitable distribution, were properly deemed to be a resource for the purpose of determining Kelley's eligibility for SSI. This issue, for which there is no directly apposite authority in this circuit or elsewhere, is a legal question, and our review is accordingly plenary. *Schaudeck v. Comm'r of Social Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

---

[5] The letter indicates that Kelley had reapplied for SSI on June 1, 2007, making July 2007 the first month she could receive benefits based on that application. *See* 20 C.F.R. § 416.335.

Under the Social Security Act, an individual is eligible for SSI benefits if (i) she is aged, blind, or disabled and (ii) her countable income and resources fall below certain statutory limits. 42 U.S.C. § 1382(a).[6] Since 1989, individuals not residing with a spouse have been obliged to show that their countable resources do not exceed $2,000 as part of establishing their eligibility for SSI benefits. *Id.* The Social Security Administration has defined resources as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). Significantly, another regulation provides that

> [i]f an individual (and spouse, if any) moves out of his or her home without the intent to return, the home becomes a countable resource because it is no longer the individual's principal place of residence. . . . The individual's equity in the former home becomes a countable resource effective with the first day of the month following the month it is no longer his or her principal place of residence.

*Id.* § 416.1212(c). The regulation further states that proceeds from the sale of a home may only be excluded from an individual's countable resources to the extent the proceeds "are intended to be used and are, in fact, used to purchase another home . . . within 3 months of the date of receipt of the proceeds." *Id.* § 416.1212(d)(1). Thus, under this regulation, it is clear the ALJ properly considered the proceeds from the sale of Kelley's marital home to be a countable resource for the purpose of calculating her SSI eligibility.

Nor is this conclusion altered because Kelley agreed to place the proceeds from the sale of her former home in an escrow

---

[6] The statue provides that resources listed in 42 U.S.C. § 1382b(a) may properly be excluded when calculating a claimant's resources. 42 U.S.C. § 1382(a)(1)(B). The parties correctly do not argue that § 1382b(a) is applicable here.

account pending equitable distribution in her divorce. The Social Security Act addresses the treatment of trusts in 42 U.S.C. § 1382b(e), which defines the term "trust" as including "any legal instrument or device that is similar to a trust." 42 U.S.C. § 1382b(e)(6)(A). Because an escrow account is similar to a trust, the escrow account Kelley created with her husband is appropriately treated as a trust under § 1382b(e).[7] That subsection, enacted in 1999 as part of the Foster Care Independence Act, Pub. L. No. 106-169, 113 Stat. 1822, separately addresses revocable and irrevocable trusts. First, it provides that if an individual has established a revocable trust, "the corpus of the trust shall be considered a resource available to the individual." *Id.* § 1382b(e)(3)(A).[8] In the case of an irrevocable trust, the statute

---

[7] This conclusion is confirmed by the Social Security Administration's Program Operating Manual System ("POMS"). The POMS represent "the publicly available operating instructions for processing Social Security claims." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003). The Supreme Court has stated that "[w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944); *United States v. Mead Corp.*, 533 U.S. 218, 228, 234–35 (2001)). The applicable POMS section reasonably interprets the statutory phrase "any legal instrument or device that is similar to a trust" as covering any instrument, device, or arrangement that involves (i) a grantor; (ii) "who transfers property (or whose property is transferred by another);" (iii) "to an individual or entity with fiduciary obligations;" (iv) "with the intention that it be held, managed or administered by the individual or entity for the benefit of the grantor or others." POMS SI 01120.201B.5; *see also* POMS SI 01120.201G.1. The POMS also explicitly list escrow accounts as an example of a legal instrument or device similar to a trust. *Id.*; *see also* POMS SI 01120.201G.2.

[8] Another provision in the subsection explains that "an individual shall be considered to have established a trust if any assets of the individual (or of the individual's spouse) are transferred to the trust other than by will." *Id.* § 1382b(e)(2)(A).

7

further provides that

> if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual (or of the individual's spouse), the portion of the corpus from which payment to or for the benefit of the individual (or of the individual's spouse) could be made shall be considered a resource available to the individual.

*Id.* § 1382b(e)(3)(B).[9]

The Social Security Act's treatment of trusts and trust-like instruments compels the conclusion that the escrowed funds were

---

The term "asset" is further defined as including

> (iii) any other payment or property to which the individual (or of [sic] the individual's spouse) is entitled but does not receive or have access to because of action by—
> (I) the individual or spouse;
> (II) a person or entity (including a court) with legal authority to act in place of, or on behalf of, the individual or spouse; or
> (III) a person or entity (including a court) acting at the direction of, or on the request of, the individual or spouse.

*Id.* § 1382b(e)(6)(C). Thus, even if the escrow was created by a court, it would still fall within the terms of the statute.

[9] In explaining this provision, the relevant POMS states that "if a payment can be made to or for the benefit of the individual under <u>any</u> circumstance, no matter how unlikely or distant in the future, the general rule . . . applies (i.e., the portion of the trust [from which payment could be made] that is attributable to the individual is a resource . . . )." POMS SI 01120.201D.2.b.

8

appropriately deemed to be one of Kelley's resources.[10] Because the terms of the escrow agreement are not in the record, it is impossible to determine definitively whether the escrow account should be deemed more akin to a revocable or irrevocable trust. Yet, the conclusion that the proceeds held in escrow were properly counted holds regardless of whether the escrow account is treated as a revocable or irrevocable trust. If Kelley's escrow account was more similar to a revocable trust, the statute's unqualified command that "[i]n the case of a revocable trust established by an individual, the corpus of the trust shall be considered a resource available to the individual" applies. *Id.* § 1382b(e)(3)(A). Even assuming the escrow account is properly considered an irrevocable trust, it is clear that the escrowed funds were correctly categorized as a countable resource given that there were certainly "circumstances under which payment from the [escrow account] could be made to or for the benefit of" Kelley. *Id.* § 1382b(e)(3)(B). Although the exact terms of the escrow agreement were never made a part of the record, Kelley and her then-husband clearly created the escrow account with the understanding that when they had agreed on an equitable distribution of the proceeds from the sale of their marital home and their divorce had been finalized, they would each receive either payments from the account or the benefit of payments from the account.[11] Given this,

---

[10] Not addressed here is whether the ALJ appropriately counted only Kelley's share of the proceeds in escrow or whether the entire proceeds from the sale of Kelley's marital home constituted a countable resource because, in either event, Kelley's countable resources would have exceeded the $2000 threshold, thereby rendering her ineligible for SSI benefits.

[11] Indeed, the June 7, 2007, letter from Kelley's divorce attorney, submitted only to the District Court, demonstrates that this is exactly what happened; Kelley's share of the funds were used to repay a loan from her mother and to pay "for other fee balances, medical insurance, and other bills associated with the children." (Appellee's Supp. App. at 2.) It is important to note that we do not rely on this letter, or any of the other materials not part of the record before the ALJ, in reaching our conclusion; the materials that were before the ALJ provide ample support.

9

it is clear that on this record, even assuming the escrow account is properly treated as an irrevocable trust, the escrowed funds were properly counted as a resource for SSI purposes.

Kelley advances three arguments against this conclusion, none of which persuades. First, Kelley asserts that the escrowed funds should not be considered a resource because she had no access to the funds. In support of this argument, Kelley relies on 20 C.F.R. § 416.1201(a), which defines the term resources as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance" and further provides that "[i]f the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource." Yet, Kelley's attempt to draw from this language the principle that funds are not a countable resource under the Social Security Act unless a claimant is able to access the funds at will is misguided.[12] Although it is certainly true that an asset is generally not an individual's resource if the individual does not have the legal right to use the asset for her support and maintenance, the regulation defining "resource" must be read in

Additionally, there is no need to remand to the Commissioner pursuant to the sixth sentence of 42 U.S.C. § 405(g) because the materials Kelley submitted after the ALJ's decision support, rather than undermine, that decision. *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ . . . ."); *see also Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (noting that a sixth-sentence remand under § 405(g) requires the claimant to show "that there [is] a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination").

[12] *Miranda v. Barnhart*, No. SA-00-CA-1195, 2002 U.S. Dist. LEXIS 25892 (W.D. Tex. Mar. 29, 2002), the sole authority on which Kelley relies for this interpretation of 20 C.F.R. § 416.1201(a), is neither controlling nor on point.

10

tandem with the later-enacted statutory provision addressing how to count the resources of an individual whose assets have been transferred to a trust or a legal instrument similar to a trust. And that provision makes clear that an individual's countable resources include assets that have been transferred to a trust-like instrument to the extent payment from the instrument "could be made to or for the benefit of the individual," regardless of whether the individual has access to the funds. *See* 42 U.S.C. § 1382b(e). Because on this record it is clear that there were circumstances under which payments could be made from the escrow account to Kelley or for her benefit, the question whether she could access the escrowed funds at will is immaterial.

Kelley's second argument, which also relies on 20 C.F.R. § 416.1201(a), is that the funds in the escrow account should not have been counted as a resource because they could not have been used for her "support and maintenance" given that her outstanding debts exceeded the escrowed funds. This argument also fails. Again, even assuming the escrow account is properly treated as an irrevocable trust, the pertinent question under § 1382b(e)(3)(B) is whether "there are any circumstances under which payment from the trust could be made to or for the benefit of the individual." Here, payments were eventually made from the escrow account to pay her outstanding debts, a clear benefit to Kelley. *See* POMS SI 01120.201F.1 ("[C]onsider payments to be made . . . to or for the benefit of an individual[] if payments of any sort from the corpus or income of the trust are paid to another person or entity so that the individual derives some benefit from the payment."). Thus, given the applicable statutory language, the fact that her outstanding debts exceeded the amount of funds in escrow is irrelevant.

Finally, Kelley argues that the conclusion reached by the ALJ is contrary to the underlying beneficent purpose of Title XVI of the Social Security Act. The primary purpose of SSI "is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110. Despite Kelley's argument to the contrary, the result reached here

11

does not undermine that basic purpose. Rather, according to the House Committee on Ways and Means's report on the section of the bill that became § 1382b(e), Congress amended the Social Security Act to address specifically how assets in trusts should be counted because of concern that individuals with resources could qualify for SSI by sheltering their assets in trust-like instruments. *See* H.R. Rep. No. 106-182(I) (1999), 1999 WL 387373, at *34. The committee report first states that under the law as it existed at the time "[a]ssets placed in a trust in which individuals have no ownership and to which they have no access no longer meet the definition of a resource for SSI purposes" because "SSI regulations define resources as cash or other liquid assets, or any real or personal property . . . that an individual (or spouse) owns and could convert to cash to be used for support and maintenance (i.e., for food, clothing, or shelter)." *Id.* The report then notes that the bill would change this treatment of assets held in trust because "[a] principle underlying virtually all Federal welfare programs is that recipients meet a test of low income and low assets" and "to allow individuals to protect resources in a trust that could be used to meet their needs violates the principle of welfare." *Id.*

This citation to the legislative history of § 1382b(e) is not intended to suggest that Kelley was attempting to hide her assets when she agreed to place the proceeds from the sale of her marital home in an escrow account. Indeed, there is no indication in the record of any fraudulent intent. Nonetheless, § 1382b(e) reflects Congress's judgment that when an individual's assets are transferred to a trust-like instrument, those assets should generally be counted as a resource in determining SSI eligibility because of the potential for fraud. Additionally, Congress tempered the effect of § 1382b(e) by exempting special needs trusts and pooled trusts and by providing that "[t]he Commissioner of Social Security may waive the application of this subsection with respect to an individual if the Commissioner determines that such application would work an undue hardship (as determined on the basis of criteria established by the Commissioner) on the individual." 42

12

U.S.C. § 1382b(e)(4)–(5).[13] Subsection § 1382b(e) thus represents the balance Congress struck in its assessment of how best to count the assets of an individual that have been transferred to a trust or trust-like device in determining that individual's eligibility for SSI, and we are bound by that judgment here.

## III.

For the foregoing reasons, we agree that the ALJ properly counted the proceeds from the sale of Kelley's marital home, placed in escrow pending equitable distribution, as a resource that rendered her ineligible for SSI. Accordingly, we affirm the judgment of the District Court.

---

[13] The criteria established by the Commissioner provide that "undue hardship exists in a month if [(i)] failure to receive SSI payments would deprive the individual of food or shelter; and [(ii)] the individual's available funds do not equal or exceed the Federal benefit rate (FBR) plus federally administered State supplement, if any." POMS 1120.203.C.1. Kelley has never argued that she satisfied the undue hardship criteria and was therefore eligible for a waiver.