IN THE SUPREME COURT OF NORTH CAROLINA

No. 277A16

Filed 29 September 2017

IN THE MATTER OF THE ESTATE OF CATHLEEN BASS SKINNER

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 787 S.E.2d 440 (2016), reversing an order entered on 22 October 2014 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Supreme Court on 29 August 2017.

> *Ward and Smith, P.A., by Jenna Fruechtenicht Butler and Alexander C. Dale, for petitioner-appellants Nancy Bass-Clark and Douglas Ray Bass.*
>
> *Braswell Law, PLLC, by Ira Braswell IV, for respondent-appellee Mark Skinner.*

ERVIN, Justice.

The resolution of this case hinges upon the identification and proper application of the appropriate standard of review for use in reviewing an order removing a guardian of the estate and trustee under a special needs trust for breach of fiduciary duty. After careful consideration of the record evidence in light of the relevant legal principles, we conclude that the Court of Appeals erred by reversing the removal order.

On 20 January 2010, a representative from the Adult Protective Services Division of the Wake County Human Services Department filed a petition seeking to have Cathleen Bass Skinner, who was, at that time, known as Cathy Bass,

adjudicated as an incompetent and to have a guardian appointed for Ms. Skinner. In support of these requests, Adult Protective Services alleged that Ms. Skinner "is a disabled adult who has short term memory loss," "carries a diagnoses [sic] of seizure disorder and early stages of dementia," "[l]acks sufficient understanding and the capacity to make or communicate responsible decisions concerning her person," and "requires 24 hour supervision, something her siblings and extended family can not [sic] commit to her." On 13 April 2010, Assistant Clerk of Superior Court Bill Burlington found Ms. Skinner incompetent and appointed Wake County Human Services to serve as Ms. Skinner's guardian.

In July 2010, Ms. Skinner's long-time friend, Mark L. Skinner, Jr., retained Gilbert W. File, III, of the Brownlee Law Firm, for the purpose of determining whether he and Ms. Skinner could legally marry and whether he could legally serve as Ms. Skinner's guardian. On 3 August 2010, Mr. and Ms. Skinner married. On the following day, Mr. Skinner filed a motion seeking to have himself appointed as Ms. Skinner's guardian. On 10 October 2010, Mr. Skinner retained Christine S. Eatmon to assist him in litigating his motion to modify the existing guardianship arrangement. On 20 January 2011, following an evidentiary hearing held on 13 January 2011 and with the consent of Mr. Skinner, Ms. Eatmon, the attorneys for Wake County Human Services, Ms. Skinner's former guardian of the person, and Ms. Skinner's guardian ad litem, the Assistant Clerk entered an order concluding that Mr. Skinner should, on a trial basis, be appointed as the guardian of Ms. Skinner's

person.  On 2 August 2011, the Assistant Clerk made Mr. Skinner's appointment as the guardian of Ms. Skinner's person permanent.

Ms. Skinner's mother, Kathleen Holton Bass, died on 27 August 2012.  Along with a number of her siblings and a niece and nephew, Ms. Skinner was named as a beneficiary in Ms. Bass's will.  On 23 August 2013, one of Ms. Skinner's brothers, Douglass Bass, and one of Ms. Skinner's sisters, Nancy Bass Clark, filed a motion seeking to have Ms. Clark appointed as the guardian of Ms. Skinner's estate on the grounds that, since Ms. Skinner had been declared incompetent, any distributions payable to Ms. Skinner from Ms. Bass's estate "will need to be distributed to an authorized recipient in order to comply with Estate requirements/laws."  On 29 August 2013, Mr. Skinner requested that he be appointed to serve as guardian of Ms. Skinner's estate instead of Ms. Clark.  As Kimberly Richards, who had been appointed to serve as Ms. Skinner's guardian ad litem, noted in her report, Ms. Skinner's family questioned the appropriateness of appointing Mr. Skinner as the guardian of Ms. Skinner's estate given that he had "sold [Ms. Skinner's] car during the pendency of the original incompetency hearing and reportedly used the funds for his own personal gain," took Ms. Skinner "to the bank so that she could withdraw fund[s] to give to him for his use," unsuccessfully sued Ms. Skinner's nephew "for reimbursement of [Mr. Skinner's] travel expenses to visit [Ms. Skinner] after she was placed in a facility by . . . Wake County Human Services," "does not appreciate the full nature of [Ms. Skinner's] mental incapacity," and "removed [Ms. Skinner] from

the adult day care center that she formerly attended, perhaps to redirect her social security funds."

On 9 October 2013, after an evidentiary hearing, the Assistant Clerk entered an order appointing Mr. Skinner as the guardian of Ms. Skinner's estate. The Assistant Clerk found, in pertinent part, that:

> 1. That [Ms. Skinner] resides with [Mr.] Skinner, in an apartment located . . . in Wake Forest, North Carolina. Mr. Skinner married [Ms. Skinner] after this court declared her incompetent. To date, no legal action has been filed to challenge the validity of this marriage.
>
> 2. That [Ms. Skinner] receives SSI [Supplemental Security Income] benefits of approximately $700.00 per month and is a Medicaid recipient.
>
> . . . .
>
> 7. [Ms. Skinner's] mother, [Ms. Bass], died on August 27, 2012. [Ms. Skinner] will inherit from her mother. [Ms. Skinner's] inheritance is expected to be between $200,000.00 and $250,000.00.
>
> . . . .
>
> 11. [Ms. Skinner] would be at risk of losing her SSI benefits and Medicaid assistance if her inheritance is not placed in a Special Needs Trust. [Ms. Skinner] was born October 20, 1951 and at the time of the hearing was 62 years old. [Ms. Skinner] will have medical needs for the remainder of her life.
>
> 12. [Mr. and Ms.] Skinner appear to love each other. The Guardian ad Litem . . . . represented to the Court that [Ms. Skinner] had expressed a desire that [Mr.] Skinner be the Guardian of her Estate.

13. [Ms.] Richards is of the opinion that [Ms.] Clark should be the guardian of [Ms. Skinner] estate. She expressed concern with regard to [Mr.] Skinner's use of a document he believes is a valid Power of Attorney. Ms. Richards does not believe the Power of Attorney is valid. She further indicated that [Mr.] Skinner does not appreciate the seriousness of Cathy's mental illness, might be resistant to placing the inheritance in a Special Needs Trust, and was further concerned by testimony of [Mr.] Skinner that he had experienced significant losses in an IRA account during the recession.

Based upon these and other findings of fact, the Assistant Clerk concluded as a matter of law, in pertinent part:

2. That an inheritance by [Ms. Skinner] of the size testified to in this case would best be managed by a Special Needs Trust. If [Ms. Skinner] were to directly receive the inheritance, it would compromise her ability to receive essential government benefits.

. . . .

4. That it is in the best interest of [Ms.] Skinner, that [Mr.] Skinner, be appointed Guardian of the Estate if he can satisfy the following conditions:
  a. That he can secure a bond in the amount of $250,000.00.
  b. That he set up a Special Needs Trust for [Ms.] Skinner and that no inheritance received by [Ms.] Skinner be spent except pursuant to the provisions of the Special Needs Trust. . . .
  c. That the Special Needs Trust shall contain an accounting provision whereby [Mr.] Skinner shall annually report all receipts and expenditures in the Special Needs Trust to [Ms.] Clark.

5. That [Ms.] Clark is capable of, and shall serve as Guardian of the Estate of [Ms.] Skinner should [Mr.] Skinner not be able to meet the above conditions . . . set out

herein. The same conditions set out herein shall apply if [Ms.] Clark serves as Guardian of the Estate.

Based upon these findings and conclusions, the Assistant Clerk ordered that Mr. Skinner be appointed as guardian of Ms. Skinner's estate subject to the posting of a $250,000.00 bond and the establishment of a Special Needs Trust for the use and benefit of Ms. Skinner, with the Special Needs Trust to contain a provision "requiring an annual accounting to [Ms.] Clark of any and all receipts and expenditures from the Special Needs Trust," and that, in the event that Mr. Skinner failed to comply with these conditions, Ms. Clark be appointed to serve as the guardian of Ms. Skinner's estate.

On 5 December 2013, Mr. Skinner posted the required $250,000.00 bond. On 18 March 2014, Mr. Skinner executed the Cathleen Bass Skinner Special Needs Trust, which was approved by the Assistant Clerk by means of an order entered on 25 March 2014, in which Mr. Skinner's appointment as guardian of Ms. Skinner's estate was reaffirmed. On 30 April 2014, letters appointing Mr. Skinner as the guardian of Ms. Skinner's estate were issued. On 21 May 2014, the Assistant Clerk entered an order directing Ms. Bass's estate to distribute Ms. Skinner's share to the Special Needs Trust.

On 28 July 2014, Mr. Bass and Ms. Clark filed a petition seeking to have Mr. Skinner removed as trustee for the Special Needs Trust "due to his non-compliance with Trust Provision Section 5.04 Duty to Report and Account" and to have Ms. Clark

appointed as successor trustee of the Special Needs Trust.[1] On 27 August 2014,

following another evidentiary hearing, the Assistant Clerk entered an order removing

Mr. Skinner as trustee under the Special Needs Trust and as guardian of Ms.

Skinner's estate and appointing Ms. Clark as successor trustee and guardian of Ms.

Skinner's estate in lieu of Mr. Skinner.[2] As a basis for these determinations, the

Assistant Clerk found as fact, in pertinent part, that:

> 2. In July 2010, [Mr.] Skinner engaged the Brownlee Law Firm and attorney Gil File to provide legal advice with respect to Mr. Skinner's desire to marry and become Guardian of the Person for [Ms.] Bass. The Brownlee Law Firm charged [Mr.] Skinner the sum of $1,000.00 for these legal services by invoice dated July 16, 2010.
>
> . . . .
>
> 4. In October 2010, [Mr.] Skinner engaged the Eatmon Law Firm, P.C. and attorney Christine Eatmon to represent him in connection with pending guardianship of the person and incompetency proceedings. The Eatmon Law Firm charged [Mr.] Skinner the sum of $1,537.50 for

---

[1] According to Section 5.04 of the Special Needs Trust, Mr. Skinner was required, among other things, to "cause monthly statements reflecting the current balance of the Trust's assets and all receipts, disbursements and distributions made within the reporting period to be mailed to [Ms. Skinner], [Ms.] Clark . . . and [Ms. Skinner's] legal representative."

[2] Although the removal petition filed by Mr. Bass and Ms. Clark did not address the issue of whether Mr. Skinner should be allowed to continue to serve as the guardian of Ms. Skinner's estate, the Assistant Clerk determined that a finding of breach of fiduciary duty "would warrant Mr. Skinner's removal as Guardian of the Estate and the hearing would . . . encompass Mr. Skinner's suitability as Guardian of the Estate in addition to his suitability as Trustee" of the Special Needs Trust. Although the Assistant Clerk "afforded [Mr. Skinner] and his counsel the opportunity to continue the hearing to another date to allow for additional preparation," Mr. Skinner elected, after conferring with his counsel, "not to continue the hearing to another date and indicated a desire to proceed with the hearing, indicating his understanding and consent as to the expanded scope of what was to be heard and decided."

these services as evidenced by a Fee Agreement dated October 18, 2010.

. . . .

9. After a contested hearing, [Mr.] Skinner was appointed Guardian of the Estate for [Ms. Skinner] subject to and in accordance with the Order Appointing Guardian of the Estate of Cathleen Bass Skinner entered October 9, 2013 (the "GOE Order").

10. As set forth in the GOE Order, the Court determined that [Ms. Skinner's] share of the Estate of [Ms.] Bass was best managed by a Special Needs Trust and that [Ms. Skinner's] share of the Estate of [Ms.] Bass should be distributed directly to the Cathleen Bass Skinner Special Needs Trust to be used for the sole benefit of [Ms. Skinner] pursuant to and in accordance with the terms of such trust, and in order to preserve those assets for [Ms. Skinner's] long term health needs.

. . . .

14. On or about June 14, 2014, an initial distribution was made to the Trust from the Estate of [Ms.] Bass. On June 16, 2014, the amount of $170,086.67 was deposited into the Trust's bank account with Fidelity Bank (the "Trust Account").

15. As of July 31, 2014, only $10,313.66 remains in the Trust Account.

16. The amounts Mr. Skinner has withdrawn from and/or distributed from the Trust Account since June 16, 2014 include a check payable to the Violin Shop, [Mr.] Skinner's personal business, in the amount of $8,387.50[.]

17. Mr. Skinner testified that the $8,387.50 paid from the Trust Account to The Violin Shop included reimbursement for his payment of $1,000.00 to the

Brownlee Law Firm and reimbursement for his payment of $1,537.50 to the Eatmon Law Firm.

18.     The legal services provided by the Brownlee Law Firm and the Eatmon Law Firm were for Mr. Skinner personally.

19.     The legal services provided by the Brownlee Law Firm and the Eatmon Law Firm pre-date the appointment of [Mr.] Skinner as Guardian of the Person for [Ms. Skinner], pre-date the appointment of [Mr.] Skinner (or anyone else) as Guardian of the Estate for [Ms. Skinner] and pre-date the establishment of the Cathleen Bass Special Needs Trust.

20.     Mr. Skinner has no authority, implied or explicit, to reimburse himself from the Trust for personal attorney's fees incurred before he became a guardian for [Ms. Skinner] and that had no relationship to his performance of any duties on behalf of [Ms. Skinner] or the Trust.

21.     Mr. Skinner also used the Trust assets to purchase a house (Wake Co. Deed Book 014713, Page 01402-06), new furniture, new appliances, and a prepaid burial/funeral insurance policy.

22.     Mr. Skinner resides with [Ms. Skinner] in the house purchased by the Trust and he benefits from the Trust purchases and expenditures relating to the house.

23.     The terms of the Trust require that the Trust assets be used for [Ms. Skinner's] sole benefit.

24.     The Trust specifically states that funeral expenses are not permitted to be paid from the Trust prior to reimbursement to North Carolina (or any other state) for medical assistance.

Based upon these findings of fact, the Clerk concluded as a matter of law, in pertinent

part, that

> 3.     Mr. Skinner's use of Trust assets to reimburse himself for personal expenditures was improper, constitutes self-dealing, and is a breach of his fiduciary duties both as Trustee and as Guardian of the Estate of [Ms. Skinner].
>
> 4.     Mr. Skinner's payment of $3,644.00 to Columbus Life for prepaid funeral expenses also is in contradiction to the terms of the Trust and in violation of his fiduciary duties as Trustee.
>
> 5.     A Trustee is required, among other things, to administer a trust as a prudent person would by considering the purposes, terms, distributional requirements, and other circumstances of the trust in the exercise of reasonable care, skill, and caution.
>
> 6.     Mr. Skinner has demonstrated that he lacks appropriate judgment and prudence.
>
> 7.     Mr. Skinner is in breach of his fiduciary duties pursuant to the terms of the Trust, the terms of the GOE Order, and applicable law.
>
> 8.     Mr. Skinner has wasted the Trust assets, mismanaged the Trust assets, and converted the Trust's assets to his own use.
>
> 9.     [In] the discretion of the Court, and based upon the evidence presented at the hearing, Mr. Skinner is unsuitable to continue serving as Trustee of the Trust and Guardian of the Estate [of Ms. Skinner], and the removal of [Mr.] Skinner as Trustee and as Guardian of the Estate best serves the interests of [Ms. Skinner].[3]

---

[3] In view of the fact that the Assistant Clerk's order did not address Mr. Skinner's compliance with the reporting and accounting provisions of the Special Needs Trust, no issue relating to those provisions was properly before the trial or appellate courts in this case,

Based upon these findings of fact and conclusions of law, the Assistant Clerk removed Mr. Skinner as Trustee under the Special Needs Trust and guardian of Ms. Skinner's estate, appointed Ms. Clark to replace Mr. Skinner in both of these capacities, precluded Mr. Skinner from spending additional amounts from the Trust or Ms. Skinner's estate, and required Mr. Skinner, among other things, to repay any amounts disbursed from the Trust or Ms. Skinner's estate since the date of the evidentiary hearing, to reimburse the Trust for the payments that he made to himself using Trust assets relating to his legal fee payments to the Eatmon and Brownlee law firms, and to provide all relevant records and make a full accounting to Ms. Clark.

On 5 September 2014, Mr. Skinner filed a notice of appeal seeking review of the Assistant Clerk's order in the Superior Court, Wake County. On 22 October 2014, the trial court entered an order affirming the Assistant Clerk's order. On 18 November 2014, Mr. Skinner noted an appeal to the Court of Appeals from the trial court's order.

In seeking relief from the trial court's order before the Court of Appeals, Mr. Skinner noted that "[t]he standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment,' " quoting *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176

---

obviating the necessity for us to examine the extent, if any, to which Mr. Skinner violated those reporting and accounting requirements.

(quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001)), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002), with the trial court's legal conclusions being subject to de novo review, citing *In re D.H.*, 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006). According to Mr. Skinner, the record did not contain sufficient evidence to show that he had engaged in self-dealing, committed a breach of fiduciary duty, acted imprudently, wasted or mismanaged trust assets, or converted trust assets to his own use. More specifically, Mr. Skinner contended that "the trial court made no findings that [he] . . . abused his discretion, acted with a dishonest motive, acted beyond the bounds of reasonable judgment or violated any specific provision of the Cathleen Bass Special Needs Trust" by using trust funds to pay for the home and associated services or attorneys' fees associated with the preparation of the trust and that the Assistant Clerk had not given sufficient deference to the discretionary decisions that he had made in the course of acting as the guardian of Ms. Skinner's estate and trustee under the Special Needs Trust.

On the other hand, Mr. Bass and Ms. Clark argued that "great deference [is accorded] to the trial court, and its ruling may be reversed only upon a showing that its action was manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision," quoting *In re Estate of Newton*, 173 N.C. App. 530, 539, 619 S.E.2d 571, 576, *disc. rev. denied*, 360 N.C. 176, 625 S.E.2d 786 (2005). According to Mr. Bass and Ms. Clark, the record "support[s] the [Assistant] Clerk's

conclusion that [Mr. Skinner] inappropriately used trust funds to benefit himself," "lacks appropriate judgment," and "mismanaged the Trust assets," with Mr. Skinner's right to exercise his discretion being insufficient, given the facts at issue in this case, to insulate him from removal as the guardian of Ms. Skinner's person and the trustee under the Special Needs Trust.

On 21 June 2016, the Court of Appeals reversed the Assistant Clerk's order removing Mr. Skinner as the guardian of Ms. Skinner's estate and trustee under the Special Needs Trust. *In re Estate of Skinner*, ___ N.C. App. ___, 787 S.E.2d 440 (2016). After noting that the abuse of discretion standard of review was only relevant with respect to "decisions that are based upon properly supported findings and legally correct conclusions" and that " 'the extent to which the trial court [had] exercised its discretion on the basis of an incorrect understanding of the applicable law raise[d] an issue of law subject to *de novo* review on appeal,' " *id.* at ___, 787 S.E.2d at 444 (quoting *In re A.F.*, 231 N.C. App. 348, 352, 752 S.E.2d 245, 248 (2013) (quoting *Koon v. U.S.*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047, 135 L.Ed.2d 392, 414 (1996))), the Court of Appeals held that the Assistant Clerk had erred by determining that the Special Needs Trust had been created "in order to preserve those assets for [Ms. Skinner's] long term health needs" given that "the subject assets were not intended to be used for [Ms.] Skinner's future medical needs," *id.* at ___, 787 S.E.2d at 445-46 (brackets in original). In addition, the Court of Appeals held that the Assistant Clerk had erred by finding "that the 'trust specifically states that funeral expenses are not

permitted to be paid from the Trust prior to reimbursement to North Carolina (or any other state) for medical expenses' " given that "[t]he Trust does not bar the use of Trust funds to purchase a prepaid burial insurance policy," *id.* at ___, 787 S.E.2d at 447. Moreover, the Court of Appeals stated that the Assistant Clerk had erred by deciding that "the terms of the Trust did not permit the Trustee to use Trust assets for the purpose of a house, furniture, or appliances"; that these purchases constituted "waste and mismanagement of Trust assets"; and that the use of these assets by Mr. Skinner violated "the requirement that the Trust be administered for the 'sole benefit' of Ms. Skinner" on the grounds that the house, furniture, and appliances had been titled to the Trust; that the purchase of such assets constituted a permissible use of Trust resources; that, while "[t]he wisdom of this investment is a separate question," it was "factually and legally inaccurate" to state that the purchase constituted waste or mismanagement "in the absence of any findings regarding the wisdom of this particular investment"; and that "an examination of the relevant regulations in the context of trust common law and the common sense realities of the life of any person, and especially of the challenges faced by a disabled person, makes it clear that the term 'sole benefit' does not mean that a disabled person . . . must live in a state of bizarre isolation in which no other person may 'benefit' from her house or furnishings." *Id.*, at ___, 787 S.E.2d at 448-51 (citing 42 U.S.C. § 1396p(d)(4)(A) and Program Operations Manual Systems Transmittal No. 48, SI 01120 TN 48). Finally, the Court of Appeals held that the Assistant Clerk had erred by concluding that "the

Trust funds could not properly be used to reimburse [the] attorneys' fees" that Mr. Skinner incurred in the course of determining whether he could legally marry Ms. Skinner or be appointed as guardian for her on the grounds that "[t]he relevant Trust provisions are ambiguous" and the Assistant Clerk's findings do not "support its implied conclusion that this error constitute[d] 'a serious breach of trust' as opposed to an honest mistake," *id.* at ___, 787 S.E.2d at 452, particularly given "Mr. Skinner's uncontradicted testimony . . . that he believed that he could use Trust funds to reimburse himself for [the relevant] attorneys' fees" and the fact "that [Mr. Skinner had] agreed to repay the Trust when this error was pointed out," *id*, at ___, 787 S.E.2d at 452. As a result, the Court of Appeals held that the trial court's order upholding the Assistant Clerk's order "must be reversed for application of the proper legal standards." *Id*. at ___, 787 S.E.2d at 453.

Judge Bryant dissented from the Court of Appeals' decision to reverse the trial court's order on the grounds that the majority had effectively "reweigh[ed] the evidence" and "disregard[ed] the deferential standard of review on appeal." *Id.* at ___, 787 S.E.2d at 453 (Bryant, J., dissenting). In the dissenting judge's opinion, the Assistant Clerk "made findings of fact which were supported by competent evidence," except for "the [Assistant] Clerk's finding that funeral expenses are not permitted to be paid from the Trust," and "those findings in turn supported his conclusion that Mr. Skinner 'is unsuitable to continue serving as Trustee of the Trust' and the guardian of Ms. Skinner's estate." *Id.* at ___, 787 S.E.2d at 454. As a result, since "the

[Assistant] Clerk's findings of fact are supported by the evidence, which findings in turn support the conclusions of law," the dissenting judge could not find that the Assistant Clerk's decision to remove Mr. Skinner as trustee of the Special Needs Trust and as guardian of Ms. Skinner's estate constituted an abuse of discretion. *Id.* at ___, 787 S.E.2d at 455. Mr. Bass and Ms. Clark noted an appeal to this Court from the Court of Appeals' decision pursuant to N.C.G.S. § 7A-30(2) (providing for "an appeal . . . of right to the Supreme Court from any decision of the Court of Appeals rendered in a case . . . [i]n which there is a dissent").

In seeking to persuade us to reverse the Court of Appeals' decision, Mr. Bass and Ms. Clark contend that the Court of Appeals erred by failing to limit its review of the Assistant Clerk's order to determining whether an abuse of discretion had occurred. According to Mr. Bass and Ms. Clark, "[b]ecause the removal of a trustee and the removal of a guardian are 'left to the discretion of the clerks of superior court,' appellate review 'is limited to a determination of whether there was a clear abuse of discretion,' " quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). As a result, Mr. Bass and Ms. Clark argue that, "in order to reverse the [Assistant] Clerk's Order, the appellate court was required to find that the [Assistant] Clerk's Order was so manifestly unsupported by reason that it could not have been the result of a reasoned decision." Mr. Bass and Ms. Clark contend that, "regardless of what the trust allowed, [Mr. Skinner] was required to act with prudence and in [Ms. Skinner's] best interests" and that the Assistant Clerk had properly determined "that

[Mr. Skinner] had not acted accordingly." Finally, Mr. Bass and Ms. Clark contend that, even if the Court of Appeals had correctly concluded that the Assistant Clerk's order rested on a misinterpretation of the applicable law, the Court of Appeals should have remanded this case to the trial court for further remand to the Assistant Clerk "for consideration of the evidence in its true legal light," quoting *Allen v. Rouse Toyota Jeep, Inc.*, 100 N.C. App. 737, 740, 398 S.E.2d 64, 65 (1990), rather than simply reversing the trial court's decision to uphold the Assistant Clerk's order.

Mr. Skinner, on the other hand, contends that the Court of Appeals correctly applied the applicable standard of review in determining that the Assistant Clerk's order was "so arbitrary that it could not have been the result of a reasoned decision," quoting *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998). According to Mr. Skinner, "[n]o deference . . . is owed to the [trial court] on conclusions of law," which are "are reviewed de novo," quoting *Everett v. Pitt Cty. Bd. of Educ.*, 678 F.3d 281, 288 (4th Cir. 2012) (alterations in original), with "a court by definition [having] abuse[d] its discretion when it makes an error of law," quoting *A Helping Hand LLC v. Baltimore County*, 515 F.3d 356, 370 (4th Cir. 2008) (*rev'd per curiam*, 355 F. App'x 773 (4th Cir. 2009)). Mr. Skinner asserts that the Assistant Clerk's order was replete with "findings and conclusions of law that were unsupported by the evidence of record and inconsistent with prevailing law," including his determination that the purpose of the Special Needs Trust was to "preserve those assets for [Ms. Skinner's] long term health needs." Thus, Mr. Skinner claims that the Assistant Clerk's decision to

remove him as trustee under the Special Needs Trust and as the guardian of Ms. Skinner's estate was unwarranted given that his actions did not "injure[ ] [Ms.] Skinner by causing her to suffer any period of ineligibility for any federal or state government benefits to which she was entitled." As a result, since he acted "in good faith and with an honest purpose to effectuate the trust," Mr. Skinner argues that the Court of Appeals properly overturned the Assistant Clerk's removal order.

In the appointment and removal of guardians and trustees, the superior court exercises derivative jurisdiction, so that "appeals [from the clerk] present for review only errors of law [that were] committed by the clerk," with the trial court in such instances being required to conduct a "hearing on the record rather than *de novo*" and being "confined to the correction of errors of law." *In re Simmons*, 266 N.C. 702, 707, 147 S.E.2d 231, 234 (1966) (citations omitted). In like manner, the essential inquiry that we are required to conduct in this proceeding involves a determination of whether the Assistant Clerk, who effectively served as the trial tribunal in this matter, committed an error of law in the course of determining that Mr. Skinner should be removed as the trustee under the Special Needs Trust and the guardian of Ms. Skinner's person.

The relevant statutory provisions clearly enunciate the approach that the Assistant Clerk was required to take in determining whether the removal petition filed by Mr. Bass and Ms. Clark should have been allowed or denied, as will be set forth in more detail below. In each instance, the clerk is authorized, but not required,

to remove a trustee or guardian in the event that the clerk determines that statutory grounds for removal exist. For that reason, the clerk must, in a proceeding convened to consider the removal of a trustee or guardian, ascertain what the relevant facts are, decide whether those facts establish that any of the statutorily specified grounds for removal exist, and, if one or more grounds for removal do exist, make a discretionary determination as to whether the acts or omissions of the trustee or guardian justify removal from the position that he or she occupies, with the exact contours of the applicable standard of review flowing from the nature of the inquiry that the Assistant Clerk is required to undertake. *See id*. at 706, 147 S.E.2d at 234 (affirming a removal order on the grounds that "[t]he records and summary of the evidence warrant the clerk's findings which are sufficient to support the order of removal").

In light of the nature of the review conducted by the Superior Court in cases like this one, involving review of an Assistant Clerk's decision for errors of law, the Assistant Clerk's order can be analogized to that of a trial judge sitting without a jury or by an administrative agency. When the trial court conducts a trial without a jury, "the trial court's findings of fact have the force and effect of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though the evidence could be viewed as supporting a different finding." *Bailey v. State*, 348 N.C. 130, 146, 500 S.E.2d 54, 63 (1998) (citing *Curl v. Key*, 311 N.C. 259, 260, 316 S.E.2d 272, 273 (1984)). Although findings of fact "supported by competent, material and

substantial evidence in view of the entire record[ ], are conclusive upon a reviewing court, and not within the scope its of reviewing powers," *In re Berman*, 245 N.C. 612, 616-17, 97 S.E.2d 232, 235 (1957), "[f]indings not supported by competent evidence are not conclusive and will be set aside on appeal." *Penland v. Bird Coal Co.*, 246 N.C. 26, 30, 97 S.E.2d 432, 436 (1957) (citing *Logan v. Johnson*, 218 N.C. 200, 10 S.E.2d 653 (1940)). "[F]acts found under a misapprehension of the law are not binding on this Court and will be set aside, and the cause remanded to the end that the evidence should be considered in its true legal light." *Hanford v. McSwain*, 230 N.C. 229, 233, 53 S.E.2d 84, 87 (1949) (citing, *inter alia*, *McGill v. Town of Lumberton*, 215 N.C. 752, 3 S.E.2d 324 (1939)). Even if one or more factual findings were made in error, the remaining findings may still suffice to support the trial tribunal's legal conclusions. *See In re Greene*, 328 N.C. 639, 650, 403 S.E.2d 257, 263-64 (1991) (per curiam) (concluding that, even though "the finding [by the Commission] that respondent told the prosecuting witness in the assault case that she deserved to be hit and had not been hit that much is not supported by clear and convincing evidence," because "the other findings of the Commission are supported by clear and convincing evidence," "we adopt them as our own" and "agree with the conclusion of the Commission"); *King v. Nat'l Union Fire Ins. Co.*, 258 N.C. 432, 439, 128 S.E.2d 849, 855 (1963) (concluding that, even though "the finding . . . that . . . plaintiff . . . [while] in possession, . . . made extensive repairs and improvements to the dwelling house is not supported by the evidence," "[b]ased upon the crucial findings of fact, which are

supported by competent evidence" the trial court's judgment was proper); *In re Estate of Pate*, 119 N.C. App. 400, 403, 459 S.E.2d 1, 2 (noting that, "[i]n a non-jury trial, [w]here there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings") *disc. rev. denied*, 341 N.C. 649, 462 S.E.2d 515 (1995) (quoting *Black Horse Run Prop. Owners Ass'n—Raleigh v. Kaleel*, 88 N.C. App. 83, 86, 362 S.E.2d 619, 622 (1987) *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988)). On appeal, "[c]onclusions of law drawn by the trial court from its findings of fact are reviewable *de novo*." *In re Foreclosure of Bass*, 366 N.C. 464, 467, 738 S.E.2d 173, 175 (2013) (quoting *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004)). "When an order has been made by the judge in the exercise of the discretion vested in him by the statute, his order is not reviewable by this Court, on appeal, except upon the ground that there has been an abuse of such discretion." *In re LaFayette Bank & Tr.*, 198 N.C. 783, 789-90, 153 S.E. 452, 455 (1930). An abuse of discretion exists when there has been "a showing that [the] actions are manifestly unsupported by reason . . . [and] so arbitrary that the ruling could not have been the result of a reasoned decision." *White*, 312 N.C. at 777, 324 S.E.2d at 833 (citing *Clark v. Clark*, 301 N.C. 123, 271 S.E.2d 58 (1980)).

According to well-established North Carolina law, "[t]he clerk has the power and authority on information or complaint made to remove any guardian." N.C.G.S. § 35A-1290(a) (2015). A clerk has a "duty to remove a guardian or to take other action

sufficient to protect the ward's interests" in the event that a "guardian wastes the ward's money or estate or converts it to his own use," "mismanages the ward's estate," "has violated a fiduciary duty through default or misconduct," or is "unsuitable to continue serving as guardian for any reason." *Id.* § 35A-1290(b)(1), (2), (6), (c)(8) (2015), recodified as N.C.G.S. § 35A-1290(b)(1), (2), (6), (15) by Act of June 29, 2017, ch. 158, sec. 4, 2017 N.C. Sess. Laws __, __). Similarly, the clerk "may remove a trustee" who "has committed a serious breach of trust" or in the event that, "[b]ecause of unfitness, unwillingness, or persistent failure . . . to administer the trust effectively," "removal of the trustee best serves the interests of the beneficiaries." *Id.* § 36C-7-706(b)(1), (3) (2015); *see also id.* § 36C-2-203(a)(1) (2015). As a result, the Assistant Clerk had the authority, pursuant to N.C.G.S. § 35A-1290 and N.C.G.S. § 36C-7-706(b), to remove Mr. Skinner as the guardian of Ms. Skinner's estate and as trustee under the Special Needs Trust, for a number of different reasons.

"A trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust" and must "exercise reasonable care, skill, and caution" while acting in his or her fiduciary capacity. *Id.* § 36C-9-902 (a) (2015).

> In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, a fiduciary shall observe the standard of judgment and care under the circumstances then prevailing, which an ordinarily prudent person of discretion and intelligence, who is a fiduciary of the property of others, would observe as [such] fiduciary; and if the fiduciary has special skills or

> is named a fiduciary on the basis of representations of special skills or expertise, he is under a duty to use those skills.

*Id*. § 32-71(a) (2015). While "the terms of the trust, in conjunction with the North Carolina Uniform Trust Code, govern[ ] the duties and powers of a trustee," *id*. § 36C-1-105(a) (2015), those terms do not prevail over the trustee's duty "to act in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries," *id*. § 36C-1-105(b)(2) (2015). As a result, while "the courts will not undertake to supervise or control [a trustee's] actions" "[w]hen it appears that a trustee has exercised or proposes to exercise discretion in good faith, and with an honest purpose to effectuate the trust," *Lichtenfels v. N.C. Nat'l. Bank*, 268 N.C. 467, 476, 151 S.E.2d 78, 84 (1966) (ellipses in original) (quoting *Carter v. Young*, 193 N.C. 678, 681-82, 137 S.E. 875, 877 (1927)), "[t]he court of equity will always compel a trustee to exercise a mandatory power and will control his exercise of a discretion vested in him when it is shown that he has exercised it dishonestly or from other improper motive." *Kuykendall v. Proctor*, 270 N.C. 510, 520, 155 S.E.2d 293, 302 (1967) (citation omitted).

Similarly, the guardian of an incompetent person's estate "has the power to perform in a reasonable and prudent manner every act that a reasonable and prudent person would perform incident to the collection, preservation, management, and use of the ward's estate to accomplish the desired result of administering the ward's estate legally and in the ward's best interest." N.C.G.S. § 35A-1251 (Supp. 2016). In

carrying out these responsibilities, the guardian is entitled, among other things, "[t]o expend estate income on the ward's behalf and to petition the court for prior approval of expenditures from estate principal," *id.* § 35A-1251(12), and "[t]o acquire and retain every kind of property and every kind of investment," *id.* § 35A-1251(16). This Court affirmed the removal of a guardian after stating that the clerk had found that "the net income from the ward's estate [had] dwindled" and "total expenditures for the period" included the purchase of a truck, refrigerator for the guardian's mother, and a television set, while the "remainder was paid for board and room for the ward." *In re Simmons*, 266 N.C. at 706, 147 S.E.2d at 233; *see also State ex rel. Roebuck v. Nat'l Sur. Co.*, 200 N.C. 196, 202, 156 S.E. 531, 535 (1931) (ordering a surety company that executed a bond for the faithful performance of a bank acting as guardian for a ward to pay the successor guardian a stated sum to reimburse the ward for the bank's failure to "invest[ ] the funds of its ward"; stating that, by "intermingling [the funds of the ward] with other funds of its bank, [the bank] was faithless to the trust reposed in it; and pointing out that its bondsman, the defendant, must suffer the loss for such faithlessness"). As a result, because the "level of conduct for fiduciaries . . . [must be] higher than that trodden by the crowd," *Wachovia Bank & Tr. Co. v. Johnston*, 269 N.C. 701, 711, 153 S.E.2d 449, 457 (1967) (quoting *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 5460 (1928)), Mr. Skinner was required to carry out his duties as guardian and trustee reasonably and prudently and in a manner that served Ms. Skinner's best interests.

The unchallenged findings of fact contained in the Assistant Clerk's order establish that, within less than two months after the $170,086.67 amount that Ms. Skinner inherited from Ms. Bass was transferred to the Special Needs Trust, only $10,313.66 remained available for Ms. Skinner's use. Among other things, Mr. Skinner paid $8,387.50 from the Special Needs Trust to The Violin Shop, with $1,000.00 of this amount being used to reimburse Mr. Skinner for the legal fees that he had paid to the Brownlee Law Firm for advice concerning the extent to which he could lawfully marry Ms. Skinner and become Ms. Skinner's guardian and with another $1,537.50 being used to reimburse Mr. Skinner for the legal fees that he had paid to the Eatmon Law Firm for personal representation in the guardianship and incompetency proceedings. In addition, the unchallenged findings of fact demonstrate that Mr. Skinner used monies derived from the Special Needs Trust to purchase a new house, along with furniture and appliances, in which he and Ms. Skinner were residing at the time of the removal hearing. Thus, the Assistant Clerk's unchallenged findings of fact establish that Mr. Skinner, while acting as the trustee under the Special Needs Trust and as the guardian of Ms. Skinner's estate, spent more than ninety percent of the monies that had been deposited in the Special Needs Trust for purposes for which he received some, if not all, of the benefit within sixty days of obtaining control of those monies. As a result, we have no hesitancy in concluding that the Assistant Clerk's unchallenged findings of fact support his conclusions that "Mr. Skinner's use of Trust assets to reimburse himself for personal

expenditures was improper, constitutes self-dealing, and is a breach of his fiduciary duties both as Trustee and Guardian" of Ms. Skinner's estate; that "Mr. Skinner has demonstrated that he lacks appropriate judgment and prudence"; that "Mr. Skinner is in breach of his fiduciary duties pursuant to the terms of the Trust, the . . . order [appointing him guardian of Ms. Skinner's estate], and the applicable law"; and that "Mr. Skinner has wasted the Trust assets, mismanaged the Trust assets, and converted the Trust assets to his own use." In view of the fact that his findings and conclusions demonstrate that Mr. Skinner had "waste[d] the ward's money or estate or convert[ed] it to his own use," N.C.G.S. § 35A-1290(b)(1), "mismanage[d] the ward's estate," *id.* § 3A-1290(b)(2), and "violated a fiduciary duty through default or misconduct," *id.* § 35A-1290(b)(6), and that Mr. Skinner "has committed a serious breach of trust," *id.* § 36C-7-706(b)(1), the Assistant Clerk had ample justification for determining that grounds for Mr. Skinner's removal as both the guardian of Ms. Skinner's estate and as trustee under the Special Needs Trust existed in this case. Finally, we are unable to say that the Assistant Clerk's determination that removal constituted a valid remedy for Mr. Skinner's breaches of fiduciary duty was "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *White*, 312 N.C. at 777, 324 S.E.2d at 833. As a result, while the Assistant Clerk appears to have erroneously construed a number of the provisions of the Special Needs Trust and while the entry of a more detailed and clearly focused order would have facilitated our review on appeal, we hold that the

Assistant Clerk's order should be affirmed and that the Court of Appeals erred by reaching a contrary conclusion.

In reversing the Assistant Clerk's order, the Court of Appeals focused upon the extent, if any, to which Mr. Skinner's conduct violated the specific provisions of the Special Needs Trust. Although the existence or non-existence of such violations is, of course, relevant to a proper removal inquiry, the Court of Appeals' apparent determination that Mr. Skinner was not subject to removal in the absence of a showing that he had, in fact, violated one or more provisions of the Special Needs Trust misapprehends the applicable law. Instead of being concentrated exclusively upon the extent to which Mr. Skinner's actions violated the provisions of the Special Needs Trust, the Assistant Clerk's order clearly and appropriately recognized that N.C.G.S. §§ 35A-1290 and 36C-7-706(b) focus upon the broader issue of whether the guardian or trustee acted in such a manner as to violate the fiduciary duty that he or she owes to the ward or beneficiary. A careful reading of the challenged removal order satisfies us that the Assistant Clerk did not remove Mr. Skinner from his position as guardian of Ms. Skinner's estate and trustee under the Special Needs Trust because he violated the terms and conditions of the Special Needs Trust; instead, the Assistant Clerk's findings and conclusions satisfy us that he acted as he did on the basis of a belief that Mr. Skinner's actions, regardless of their consistency with specific provisions of the Special Needs Trust, constituted waste and mismanagement of the assets committed to his care. As we have already noted, the

extent to which a guardian or trustee violated his or her fiduciary duty is a separate, and broader, question than the issue of whether he or she violated a specific provision of a written trust instrument. *See* N.C.G.S. § 36C-1-105(b)(2) (providing that "[t]he duty of a trustee . . . to act in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries" overrides "[t]he terms of a trust"). Thus, the fact that Mr. Skinner's conduct may have been consistent with the terms of the Special Needs Trust did not insulate him from removal.

In seeking to persuade us to reach a different result, Mr. Skinner emphasizes the scope of his discretionary authority and defends the spending decisions upon which the Assistant Clerk's order rests as having benefitted Ms. Skinner and been in her best interest. Although we recognize that a guardian and trustee has discretion in the manner in which he or she attempts to meet the needs of his or her ward or beneficiary, there are, as this Court has previously noted, limits to the scope and extent of that discretion. In view of the fact that the Assistant Clerk's findings of fact demonstrate that Mr. Skinner expended over ninety percent of the monies committed to his custody for Ms. Skinner's use and care within a short time after receiving them in ways that either directly or indirectly benefitted himself while leaving insufficient monies in the Trust to either preserve the assets into which he had invested the bulk of the Trust's funds or to take care of Ms. Skinner's long term needs, we cannot say that the Assistant Clerk erred in determining that Mr. Skinner exceeded the scope of the discretion that was admittedly available to him to such an extent that grounds

for his removal as the guardian of Ms. Skinner's person and as trustee under the Special Needs Trust existed under N.C.G.S. §§ 35A-1290 and 36C-7-706(b) and that these breaches of fiduciary duty justified his removal. As a result, the Court of Appeals' decision in this case is reversed.

REVERSED.

Justice MORGAN dissenting.

I respectfully dissent from the decision of the majority that the Assistant Clerk was authorized, in his discretion as exercised under the circumstances presented in this case, to properly remove Mr. Skinner as the Trustee of his legally incompetent wife's Special Needs Trust and guardian of her estate. While the majority in its opinion acknowledges that the Assistant Clerk erroneously construed a number of the provisions of the Special Needs Trust at issue, my learned colleagues stretch far too much to bring these critical errors within the realm of the proper exercise of broad discretion while simultaneously minimizing these missteps by overemphasizing the strength of his remaining findings. The fundamental misapprehension of the law exhibited by the Assistant Clerk is too profound to be salvaged in this manner. As a result, in my view, Mr. Skinner's removal from his position as Trustee of Mrs. Skinner's Special Needs Trust and guardian of her estate was not justified. I agree

with the rationale of the Court of Appeals decision. In my view, the case should be remanded to the trial court for proper application of the correct legal standard.

In the first instance, the Assistant Clerk misinterpreted the essence of a special needs trust when making his decision to remove Mr. Skinner as Trustee and as guardian of his wife's estate. A special needs trust, such as the one at issue in the present case, which meets designated federal requirements as identified in 42 U.S.C. § 1396p(d)(4)(A) allows the beneficiary to maintain eligibility for Medicaid and Social Security disability benefits. "The whole purpose of a special needs trust is to shelter resources so that the state, through Medicaid, pays for medical expenses rather than having the beneficiary's family pay for them." *Hobbs v. Zenderman*, 542 F. Supp. 2d 1220, 1234 (D.N.M. 2008), *aff'd*, 579 F.3d 1171 (10th Cir. 2009); *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 539 (5th Cir. 2013) ("The primary purpose of special needs trusts is to allow beneficiaries to maintain eligibility for public benefits—such as Medicaid—while supplementing those benefits so that the beneficiary enjoys a better quality of life." (Haynes, J. concurring in part and dissenting in part), *cert. denied*, 134 S. Ct. 618, 187 L. Ed. 2d 400 (2013)). This was a proper consideration by the Assistant Clerk, manifested by his requirement in his 9 October 2013 order appointing Mr. Skinner as guardian of Mrs. Skinner's estate that a special needs trust be established. This recognition is displayed in the Assistant Clerk's finding, which is also cited in the majority opinion, that "[Mrs. Skinner] would be at risk of losing her SSI benefits and Medicaid assistance if her inheritance is not placed in a

Special Needs Trust . . . [Mrs. Skinner] will have medical needs for the remainder of her life."

Subsequently, however, the Assistant Clerk incorrectly determined that the purpose of the Special Needs Trust was to shield Mrs. Skinner's resources for future medical expenses, rather than the actual purpose referenced in federal statutory and case law that authorizes a special needs trust to fund resources that will improve a beneficiary's quality of life while still protecting that beneficiary's ability to access governmental resources such as Medicaid and Social Security. The Court of Appeals correctly understood and applied this fundamental purpose of a special needs trust in reversing the Assistant Clerk's order that removed Mr. Skinner from the positions of authority for his wife.

The Assistant Clerk's misunderstanding of the purpose of the Special Needs Trust is a misapprehension of law that renders his decision to remove Mr. Skinner as Trustee and guardian of Mrs. Skinner's estate an abuse of discretion. While this Court's standard of review is limited to a determination of whether the Assistant Clerk abused his discretion, "an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 2047, 135 L. Ed. 2d 392, 414 (1996) (citation omitted). It is well-established in this Court's decisions that a misapprehension of the law is appropriately addressed by remanding the case to the appropriate lower forum in order to apply the correct legal standard. *See, e.g., Wilson v. McLeod Oil Co.*, 327

N.C. 491, 523, 398 S.E.2d 586, 603 (1990); *State v. Grundler*, 249 N.C. 399, 402, 106 S.E.2d 488, 490 (1959), *cert. denied*, 362 U.S. 917, 80 S. Ct. 670, 4 L. Ed. 2d 738 (1960).

The Assistant Clerk's decision to remove Mr. Skinner as Trustee is replete with other examples of misapprehensions of the law which amounted to an abuse of discretion, and which were duly noted by the Court of Appeals, in the Assistant Clerk's interpretation of the Special Needs Trust and Mr. Skinner's actions regarding it.

The Assistant Clerk erred by failing to distinguish between the use of Trust funds for funeral expenses after termination of the Trust and the use of Trust funds for the purchase of prepaid funeral or burial insurance during the beneficiary's lifetime. In his removal order, the Assistant Clerk reasoned that "[t]he Trust specifically states that funeral expenses are not permitted to be paid from the Trust prior to reimbursement to North Carolina (or any other state) for medical assistance." The Assistant Clerk then concluded that "Mr. Skinner's payment of $3,644.00 to Columbus Life for prepaid funeral expenses . . . is in contradiction to the terms of the Trust and in violation of his fiduciary duties as Trustee." However, in accord with 42 U.S.C. § 1396p(d)(4)(A), upon the death of a beneficiary or upon early termination, a Special Needs Trust must reimburse the State for medical expenses. To comply with this provision, the Special Needs Trust provides that upon Mrs. Skinner's death, the Trustee is required to "notify the appropriate state agency of [Mrs. Skinner's] death and must promptly obtain an accounting from the states (or local Medicaid agencies

of the states) that have made Medicaid payments on [Mrs. Skinner's] behalf during her lifetime."[1] The Special Needs Trust further provides that after the State is fully reimbursed, the Trustee may pay for funeral expenses. There is no provision in the Special Needs Trust that prevented Mr. Skinner from using trust funds to purchase prepaid funeral and burial insurance during Mrs. Skinner's lifetime. Therefore, the Assistant Clerk misinterpreted the federal statutory provision mandating that, after death, the State was to be reimbursed before other expenses were paid, by erroneously construing the 42 U.S.C. § 1396p(d)(4)(A) language to bar payment for funeral and burial insurance before death.

The Assistant Clerk's inaccurate construction of the purpose of the Special Needs Trust likewise yielded an improper analysis of Mr. Skinner's decision to use trust funds to purchase a house to serve as the marital home for the Skinners, plus some furnishings. The Assistant Clerk found that Mr. Skinner used such assets to purchase the home, new furniture, and new appliances, and that because Mr. Skinner is the husband of the trust beneficiary wife and therefore resides in the home with her, he improperly benefits from the purchases. As a result, the Assistant Clerk reached the conclusion that Mr. Skinner showed a lack of prudence and judgment and "breach[ed] . . . his fiduciary duties pursuant to the terms of the Trust, the terms of the GOE Order, and applicable law."

---

[1] Medicaid would have to be paid first if the Special Needs Trust was terminated early as well.

Contrary to the Assistant Clerk's misapprehension of the law, the purchase of the house and related expenditures were authorized by the Special Needs Trust consistent with the purpose of a special needs trust. Article Two of the Special Needs Trust here provides, in pertinent part, that

> [t]he Trustee will hold, manage, invest and reinvest the Trust Estate, and will pay or apply the income and principal of the Trust Estate in the following manner: . . .
>
> During Beneficiary's lifetime, the Trustee will pay from time to time such amounts from the Trust Funds for the satisfaction and benefit of [the] Beneficiary's Special Needs (as hereinafter defined), as the Trustee determines in the Trustee's discretion, as hereinafter provided.

Section 7.02(a) of the Trust defines the term "special needs" as the "Beneficiary's needs that are not covered or available from any local, state, or federal government, or any private agency, or any private insurance carrier covering Beneficiary."

Here Mr. Skinner authorized trust assets to pay approximately $135,000.00 for the purchase of the house, which is titled to the Trust, and between $3,200.00 and $4,500.00 for furniture, appliances, and repairs to the house. The evidence shows that the house, furnishings, and appliances are owned by the Trust; the house is handicapped-accessible to readily accommodate Mrs. Skinner; and it is located in close proximity to where Mrs. Skinner previously lived. The determination of Mr. Skinner, in his role as Trustee, to improve Mrs. Skinner's quality of life through this move to a new home is consistent with the express purpose of a special needs trust. With the physical enhancements of new furnishings and fresh repairs for a better

house suited to fit Mrs. Skinner's ongoing needs in a neighborhood which was familiar to her, Mr. Skinner's expenditures of the trust funds in this regard fall squarely within his discretionary authority to periodically pay such amounts for the satisfaction and benefit of his wife's special needs. The failure of the Assistant Clerk to recognize Mr. Skinner's sanctioned fulfillment of his duties as Trustee of Mrs. Skinner's Special Needs Trust, coupled with the Assistant Clerk's concomitant negative view of these permissible expenditures, constitutes a clear misapprehension of the law.

Finally, I must address the Assistant Clerk's ruling that Mr. Skinner's reimbursements which he obtained from the Special Needs Trust in the amounts of $1,000.00 and $1,537.50 for his payments to two law firms were unauthorized because these expenditures arose before Mr. Skinner's appointment to the roles of Trustee and guardian of Mrs. Skinner's estate. I embrace the Court of Appeals' position that the Assistant Clerk's misapprehension of the law on the other questioned usages of trust funds extended to a narrow view by the Assistant Clerk that Mr. Skinner was automatically ineligible for any reimbursements of expenditures that he plausibly made with regard to his guardianship status and the potential legal impact of the Skinners' marriage upon her financial well-being. I evaluate the Assistant Clerk's view of Mr. Skinner's withdrawal of $8,387.50 from the Special Needs Trust for payment to his violin business to be consistent with the Assistant Clerk's misapprehension of the law, which was reflected in the Assistant

Clerk's dark lens of perceived "self-dealing," "violation of [Mr. Skinner's] fiduciary duties as Trustee," "lack[ ] [of] appropriate judgment," and "waste [ ]," "mismanage[ment]" and "conver[sion]" of Trust assets regarding the prepaid funeral expenses, burial insurance, marital home, marital home furnishings, law firm bills and overall special needs trust administration. I believe that the Assistant Clerk's fundamental misapprehension of the law amounts to an abuse of discretion that would necessitate a reversal and remand of the trial court's order affirming the Assistant Clerk's order to remove Mr. Skinner as Trustee of his wife's Special Needs Trust and guardian of her estate.

For these reasons, I respectfully dissent and adopt the rationale of the Court of Appeals' decision, and would remand this case to the Court of Appeals for remand to the trial court with instructions to apply the appropriate legal standard.

Justices NEWBY and JACKSON join in this dissenting opinion.